JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE SARMIENTO,<br>*on behalf of himself and others*<br>*similarly situated*,<br><br>    Plaintiff,<br><br>    v.<br><br>VITAS HEALTHCARE<br>CORPORATION OF<br>CALIFORNIA, et al.,<br><br>    Defendants. | Case No. 2:25-cv-04025-MAA<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND THE ACTION TO STATE COURT AND REQUEST FOR ATTORNEYS' FEES IN THE AMOUNT OF $9,375.00 [ECF No. 21]** |

I.    **INTRODUCTION**

This putative class action arises from Plaintiff Jose Sarmiento's ("Plaintiff") employment with Defendants VITAS Healthcare Corporation of California dba VITAS Healthcare ("Vitas") and VITAS HME Solutions, Inc. ("Vitas HME") (collectively, "Defendants"), whom he alleges were joint employers or agents of each other with respect to the alleged violations.  Plaintiff brings a series of wage-and-hour claims under California law alleging Defendants failed to pay minimum and overtime wages, authorize or permit meal periods and rest breaks, failed to provide accurate wage statements, failed to timely pay all wages earned upon

separation, and, in so doing, engaged in unfair business practices ("Complaint"). (*See generally* Compl., ECF No. 1-3.)

Defendants removed the case to this Court on May 5, 2025 on the basis of 28 U.S.C. § 1332(d)—the Class Action Fairness Act ("CAFA") ("Removal"). (Removal, ECF No. 1, at 2.)[1]  In support of the Removal, Defendants filed (1) the Declaration of Reena Maico-Smith ("Maico-Smith Declaration") (Maico-Smith Decl., ECF No. 1-1), and (2) the Declaration of Jesse C. Ferrantella (ECF No. 1-2) with its accompanying Defendants' Exhibit 1 (the Complaint); Defendants' Exhibit 2 (the proof of service); and Defendants' Exhibit 3 (Defendants' answer to the Complaint) (ECF Nos. 1-3, 1-4, and 1-5, respectively).  In satisfaction of CAFA jurisdiction, Defendants contend that (1) minimal diversity exists between Defendants, on the one hand, and Plaintiff and many of the putative class members, on the other; (2) the aggregate number of putative members among all proposed classes exceeds 100; and (3) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.  (*See generally* Removal.)

Before the Court is Plaintiff's Motion to Remand the Action to State Court and Request for Attorneys' Fees in the Amount of $9,375.00 ("Motion").  (Mot., ECF No. 21.)  In support of the Motion, Plaintiff filed (1) the Declaration of Cassandra A. Castro (ECF No. 21-2), and (2) a Request for Judicial Notice ("RJN") with its accompanying Plaintiff's Exhibit 1 and Plaintiff's Exhibit 2 (RJN, ECF No. 21-3).  Defendants filed an amended opposition to Plaintiff's Motion ("Opposition").  (Opp'n, ECF No. 36.)[2]  In Support of the Opposition, Defendants filed the Supplemental Declaration of Reena Maico-Smith ("Maico-Smith

---

[1] Pinpoint citations of docketed documents refer to the page numbers in the ECF-generated headers.

[2] Defendants originally filed an opposition that contained unintelligible and undecipherable content.  (*See* ECF No. 26 at 23–27).  Upon the Court's order, Defendants filed the amended opposition.  For ease of reference, the Court refers to the amended opposition as the "Opposition."

Supplemental Declaration"). (Maico-Smith Suppl. Decl., ECF No. 26-1.) Plaintiff filed a reply in support of the Motion ("Reply").[3] (Reply, ECF No. 30.)

The matter stands submitted. The hearing on the Motion, previously set for July 18, 2025 was vacated on July 10, 2025. (ECF No. 33.) After considering the papers filed in support and in opposition, the Court deems the Motion appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, the Court **DENIES** Plaintiff's Motion in its entirety.

## II.    BACKGROUND

### A.    Allegations in the Complaint[4]

Plaintiff is an individual who previously was employed by Defendants from on or about January 19, 2024 until in or around October 2024 as an hourly non-exempt employee. (Compl. ¶ 4.) Defendants operate in California and employed Plaintiff and the putative class members in locations throughout California. (*See id.* at ¶ 2.)

Plaintiff alleges that Defendants required him and the putative class members to "work[] more minutes per shift than Defendants credited them with having worked"— including requiring them "to remain on-duty during their off-the-clock meal breaks" by forcing them "to keep their employer-issued cell phone on them at all times during their shift to monitor and respond to calls from Defendant" and requiring them "to work on-call hours without being paid for all on-call hours worked—and "failed to pay [them] all wages at the applicable minimum wage for all hours." (*See id.* at ¶¶ 16, 21.) Plaintiff also alleges that Defendants failed to pay

---

[3] Plaintiff was given an opportunity to respond to Defendants' amended opposition but elected to not do so. (*See* ECF No. 37.)

[4] The Court summarizes the allegations and claims in the Complaint. In doing so, the Court neither opines on the veracity or merit of Plaintiff's allegations and claims nor make any findings of fact.

1   him and the putative class members for any hours worked in excess of eight in a

2   day and forty in a workweek at the legal overtime rate.  (*See id.* at ¶ 23.)  In

3   addition, Plaintiff alleges Defendants not only failed to authorize or permit

4   compliant meal periods and rest breaks for him and the putative class members, but

5   Defendants also failed to pay them the required meal period premium wage of one

6   additional hour of pay for each day in which they did not receive the required and

7   compliant meal periods.  (*See id.* at ¶¶ 27–28, 32–33.)  As a derivative of these

8   claims, Plaintiff alleges that Defendants failed to provide accurate wage statements

9   to him and the putative class members.  (*See id.* at ¶ 36.)  Finally, Plaintiff contends

10  that, also as a result of these alleged violations, he and the putative class members

11  were not paid their final wages—made up of minimum wages, overtime wages,

12  meal period and rest break premium wages—in a timely manner upon their

13  separation from employment.  (*See id.* at ¶ 38.)

14       On this basis, Plaintiff brings eight claims for relief as a class action on

15  behalf of himself and the putative class members.  The Complaint purports to

16  certify a "California Class" of "all current and former hourly non-exempt

17  employees employed by Defendants" consisting of multiple sub-classes, including

18  (1) a minimum wage class; (2) an overtime class; (3) a meal period class; (4) a rest

19  period class; (5) a wage statement class; and (6) a waiting time class.  (*See id.* at

20  ¶ 39.)

21       **B.    The Maico-Smith Declarations**

22       In support of the Removal, Defendants submitted the Maico-Smith

23  Declaration, and in support of the Opposition, they submit the Maico-Smith

24  Supplemental Declaration.  (Maico-Smith Decl.; Maico-Smith Suppl. Decl.)  In

25  both, Maico-Smith declares that she is the Senior Regional Human Resources

26  Director, West Coast Division, California Region and that, in this capacity, she has

27  "knowledge, access to, possession, custody, and/or control of certain personnel data

28  of [Defendants'] employee workforce in California, including [that] of Plaintiff . . .

4

and the putative class . . . ."  (Maico-Smith Decl. ¶ 1; Maico-Smith Suppl. Decl. ¶ 1.)  She avers that, in preparing her declarations, she "directed the retrieval of and reviewed the employee and personnel data for Plaintiff and the putative class, including but not limited to their applicable hire dates, termination dates (where applicable), and rates of pay," all included in records maintained by Defendants in their regular practice.  (Maico-Smith Decl. ¶ 1; Maico-Smith Suppl. Decl. ¶ 1.)  Based on this analysis, Maico-Smith provides the following data:

- From March 26, 2021 to April 24, 2025, Vitas:
  - employed, in the aggregate, at least 2,348 non-exempt employees in California, who worked approximately 211,470 workweeks, and whose average rate of pay was $31.12, and
  - separated at least 893 such employees.
- From March 26, 2024 to April 24, 2025, Vitas:
  - employed at least 1,284 non-exempt employees in California for whom there were approximately 27,506 pay periods during which wage statements would be issued, and
  - no such employee received more than 40 wage statements.

(Maico-Smith Decl. ¶¶ 3–5.)

- From January 17, 2023 to May 5, 2025, Vitas:
  - employed, in the aggregate, at least 1,626 non-exempt employees in California, who worked approximately 113,730 workweeks, and whose average rate of pay was $30.66, and
  - separated at least 630 such employees.
- From March 26, 2021 to May 5, 2025, Vitas HME:
  - employed, in the aggregate, at least 157 non-exempt employees in California, who worked approximately 9,309 workweeks, and whose average rate of pay was $19.71, and
  - separated at least 64 such employees.

///
///
///

5

- From March 26, 2024 to May 5, 2025, Vitas HME:
  - Employed at least 58 non-exempt employees in California, who worked approximately 1,220 pay periods for which wage statements would be issued, and
  - No such employee received more than 40 wage statements during this period.

(Maico-Smith Suppl. Decl. ¶¶ 2–4.)

## III.    LEGAL STANDARD

Remand may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure. *See* 28 U.S.C. § 1447(c). The Court strictly construes the removal statutes against removal jurisdiction, and jurisdiction must be rejected if there is any doubt as to the right of removal. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

CAFA gives federal courts original jurisdiction over certain class actions if (1) "the class has more than 100 members"; (2) "the parties are minimally diverse"; and (3) "the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84–85 (2014). There is no presumption against removal jurisdiction in CAFA cases; rather, "Congress intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015). Still, the defendant bears the burden of establishing removal jurisdiction. *See Gaus*, 980 F.2d at 564. CAFA's "minimal diversity" requirement means that "a federal court may exercise jurisdiction over a class action if 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'" *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165 (2014) (quoting 28 U.S.C. § 1332(d)(2)(A) through (d)(10)).

When a defendant removes a class action to federal court based on CAFA, the "notice of removal need include only a plausible allegation that the amount in

6

controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89.

"Evidence establishing the amount is required . . . only when the plaintiff contests,

or the court questions, the defendant's allegation." *Id.*  If the allegation is disputed,

the party seeking removal—and invoking the jurisdiction of the federal courts—

bears the burden of demonstrating that the amount in controversy exceeds $5

million.  *See Ibarra*, 775 F.3d at 1197.

The Ninth Circuit has explained that the amount in controversy is the

"amount at stake in the underlying litigation." *Gonzales v. CarMax Auto*

*Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (quoting *Theis Rsch., Inc. v.*

*Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005)). "[T]his includes any result of

the litigation, excluding interests and costs, that 'entail[s] a payment' by the

defendant." *Id.* (quoting *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701

(9th Cir. 2007)).  Among other items, the amount in controversy includes damages

(compensatory, punitive, or otherwise), the costs of complying with an injunction,

and attorneys' fees awarded under fee-shifting statutes or contract.  *See id.* at 648–

59 (citing *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th

Cir. 2000)); *see also Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005)

(citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998)).

Under CAFA removal, "[t]he amount in controversy is simply an estimate of

the total amount in dispute, not a prospective assessment of [the] defendant's

liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)

(citing *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)).  Thus, the

removing defendant "need not present evidence of what its ultimate liability will

be." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025).  Although the

defendant's amount-in-controversy estimate must be grounded in the plaintiff's

complaint, the parties also may submit additional "evidence outside the complaint,"

such as "affidavits or declarations, or other 'summary-judgment-type evidence

relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at

7

1    1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir.

2    1997)).  In addition, the parties may rely on a "chain of reasoning that includes

3    assumptions." *Id.* at 1199; *see also Jauregui v. Roadrunner Transp. Servs., Inc.*, 28

4    F.4th 989, 993 (9th Cir. 2022).  These assumptions, however, must have "some

5    reasonable ground underlying them" and cannot be based on "mere speculation and

6    conjecture." *Ibarra*, 775 F.3d at 1197; *see also Jauregui*, 28 F.4th at 993.

7         The Court evaluates a challenged amount-in-controversy estimate under the

8    preponderance of the evidence standard.  *Rea v. Michaels Stores Inc.*, 742 F.3d

9    1234, 1239 (9th Cir. 2014).  Under this framework, the defendant need only

10   establish "that the potential damages could exceed the jurisdictional amount." *Id.*

11   (quoting *Lewis*, 627 F.3d at 397).  Here, a court looks to see if, based on the

12   evidence provided by the defendant, "it is more likely than not that the amount in

13   controversy exceeds [the jurisdictional] amount." *Sanchez v. Monumental Life Ins.*

14   *Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (internal quotation omitted).  In determining

15   whether the removing party has satisfied this burden, the district court may consider

16   facts in the removal petition and "'summary-judgment-type evidence relevant to the

17   amount in controversy at the time of removal.'" *Singer*, 116 F.3d at 377 (quoting

18   *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335–36 (5th Cir. 1995)).  If, upon

19   such review, the court determines that the defendant has failed to meet this burden,

20   the federal court lacks subject matter jurisdiction and the case must be remanded.

21   *See* 28 U.S.C. § 1447(c).

22

23   **IV.   REQUEST FOR JUDICIAL NOTICE**

24        Plaintiff asks the Court to take judicial notice of two documents in a class

25   action entitled *Reyes v. Vitas Healthcare Corporation of California*, Santa Clara

26   Superior Court, Case No. 21CV383902, filed June 16, 2021 ("*Reyes* Action")

27   ("RJN").  (*See generally* RJN, ECF No. 21-3.)  Specifically, Plaintiff seeks judicial

28   notice of (1) Plaintiff's Exhibit 1—the Order Granting Final Approval of Class

Action Settlement and Final Judgment filed on March 7, 2024 in the *Reyes* Action ("*Reyes* Judgment"), and (2) Plaintiff's Exhibit 2—the *Reyes* Second Amended Complaint ("*Reyes* SAC"). (RJN 1.) Plaintiff seeks this judicial notice in order to introduce three facts purportedly relevant to the calculation of the amount in controversy: (1) that the claims released in the *Reyes* Action subsume a majority of the Class Action claims asserted in his Complaint; (2) that the liability period in the *Reyes* Judgment overlaps significantly with the liability period in his Complaint; and (3) that only three of the 2,287 class members in the *Reyes* Action opted out of the *Reyes* settlement. (Mot. 8.) These facts, he contends, are necessary to establish that Defendants' amount-in-controversy calculation is "inflated and inaccurate" in that it does not account for "the preclusive effect of the *Reyes* Judgment . . . as applied to nearly two years of the relevant time period [here]." (Mot. 8–9, 11, 13–14, 17.)

Defendants do not object to Plaintiff's request for judicial notice. (*See generally* Opp'n.)[5] While the absence of objection by Defendants is, without more, sufficient grounds to grant Plaintiff's request (*see* C.D. Cal. L.R. 7-12; *see also Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995)), the Court is mindful of its obligation to ensure that the evidence presented in support of (or opposition to) the Motion satisfies the "summary-judgment-type evidence standard." Accordingly, the Court analyzes Plaintiff's RJN on its merits.

Federal Rule of Evidence 201 allows "a court [to] take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986)). Because the *Reyes* SAC and the *Reyes* Judgment are public records, Plaintiff's Exhibits 1 and 2 are appropriate for judicial notice. *See, e.g.*, *Irvin v. Madrid*, No. CV-16-1198-DMG-JEMx), 2016 U.S. Dist. LEXIS 188966, at *3

---

[5] Indeed, Defendants identified the *Reyes* Action as a related action. (*See* ECF No. 4.)

(C.D. Cal. Dec. 8, 2016) (taking judicial notice of court filings).  On this basis, the Court **GRANTS** Plaintiff's RJN and takes judicial notice of the *Reyes* SAC and the *Reyes* Judgment.

## V.    DISCUSSION

Plaintiff does not dispute that Defendants have satisfied CAFA's jurisdictional requirements of minimum diversity and class numerosity.  (*See generally* Mot.)  Rather, Plaintiff's challenge to CAFA jurisdiction is limited to whether CAFA's requirement that the amount in controversy exceed $5 million is met.  (*See generally* Mot.; *see generally* Reply.)

Defendants argue that they satisfy the amount in controversy requirement solely through their calculation of the potential penalties claim under California Labor Code section 203 ("Section 203") and the attorneys' fees Plaintiff and the putative class could recover if they prevail on that claim.  (*See* Removal ¶¶ 19–30; Opp'n 13–23.)  Therefore, the Court must analyze the amount in controversy as to Plaintiff's Section 203 penalties claim and associated attorneys' fees, *see Ibarra*, 775 F.3d at 1199, and whether that estimated amount is reasonably supported by a preponderance of the evidence, *see Dart Cherokee*, 574 U.S. at 88.

### A.    The Removal Plausibly Alleges a Basis for CAFA Jurisdiction

In the Removal, Defendants contend that the CAFA amount-in-controversy requirement is satisfied because Plaintiff's Section 203 claim totals at least $6,669,638 and the associated attorneys' fees total $1,667,409, for a total estimated amount in controversy of $8,337,047.  (Removal ¶¶ 19–30.)

"A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924–25 (9th Cir. 2019) (internal quotation marks and citation omitted).  Under Section 203, an employer must pay a

10

penalty if it fails to pay all wages due upon termination.  *See* Cal. Lab. Code § 203.
This penalty is the daily wages of the separated employee, accruing daily until the
wages are paid for a maximum of thirty (30) days).  *See id.*  Defendants calculate
the $6,669,638 amount in controversy for this claim based on the separation of 893
putative class members during the relevant period, multiplied by their average daily
rate of $248.96 ($31.12 average hourly rate multiplied by 8 hours per day),
multiplied by a violation rate of 30 days.  (Removal 8.)  With the exception of the
violation rate, the data points are provided through the Maico-Smith Declaration.
(Maico-Smith Decl. ¶¶ 3–5.)

This, without more, is sufficient to exceed the $5 million amount-in-
controversy floor for CAFA jurisdiction.  However, Defendants bolster their
jurisdictional argument by adding $1,667,409 in attorneys' fees to the amount in
controversy.  (Removal ¶¶ 28–29.)  The Complaint seeks attorneys' fees in
connection with, among other claims, the Section 203 claim.  (Compl. 64 (Prayer
for Relief on the Sixth Cause of Action).)  The additional $1,667,409 is calculated
by multiplying the $6,669,638 Section 203 amount in controversy by a benchmark
percentage of 25%.  (Removal ¶ 29.)

In sum, the Removal properly provided the required "short and plain
statement of the grounds for removal."  *Dart Cherokee*, 574 U.S. at 83.

### B.    Plaintiff's Challenge of Defendants' Amount-in-Controversy
### Calculation Is Unavailing

Plaintiff challenges Defendants' amount-in-controversy calculation on two
theories.  *First*, Plaintiff contends that Defendants failed to account for—and
thereby overstated their amount-in-controversy calculation by—the preclusive
effect of the *Reyes* Judgment.  (Mot. 12–14.)  *Second*, Plaintiff contends that
Defendants' amount-in-controversy calculation is based upon flawed facts and
///

11

speculative and flawed assumptions. (*Id.* at 15–17.)  The Court addresses each theory in turn.

> **1.    The *Reyes* Judgment does not affect, let alone require a reduction of, Defendants' amount-in-controversy calculation.**

Plaintiff contends that Defendants' amount-in-controversy calculation should be discredited because it fails to account for the effect of the *Reyes* Judgment and thus is overstated. (Mot. 13, 17.)   He argues that the Court should consider only "what the Court in reality could award" as the amount in controversy. (*Id.* at 9.) Specifically, Plaintiff notes that the *Reyes* Judgment released the claims Plaintiff brings here to the extent the liability period for released claims in the *Reyes* Action—May 16, 2019 to January 16, 2023—overlaps with the liability period here—March 26, 2021 to present. (*Id.* at 13.)  On this basis, he argues that Defendants' amount-in-controversy calculation for the Section 203 claim—which includes *all* former employees since March 26, 2022—is overinclusive because it should not have included the overlapping period of March 26, 2022 to January 16, 2023 that contains claims released in the *Reyes* Action. (*Id.*)

Defendants respond that the amount-in-controversy need not be adjusted based upon the *Reyes* Judgment. (Opp'n 21–23.)[6]  For the reasons stated below, the Court agrees.

*First*, Defendants contend that "the amount in controversy in any case is 'determined by the complaint operative at the **time of removal** and encompasses all relief a court may grant on that complaint.'" (Opp'n 20 (quoting *Fritsch v. Swift*

---

[6] Defendants also contend that they satisfy the amount in controversy requirement even after adjusting for the *Reyes* Judgment. (Opp'n 23–27.)  However, because the Court concludes, as detailed below, that the amount in controversy is satisfied based solely on the Section 203 penalties claim, the Court does not reach this argument.

*Transp. Co. of Arizona*, 899 F.3d 785, 791 (9th Cir. 2018) (emphasis in Opposition added).)  They posit that to adjust the amount in controversy here based upon any impact that the *Reyes* Judgment may have, as Plaintiff suggests, would be to improperly "conflate[] the amount in controversy with the amount ultimately recoverable."  (Opp'n 21 (quoting *Gonzales*, 840 F.3d at 648.)  They argue that the Ninth Circuit considers such an adjustment improper because the "'strength of any defenses . . . is irrelevant to determining the amount that is at stake in the litigation.'"  (Opp'n 21 (quoting *Arias*, 936 F.3d at 928).)  The Court agrees. Indeed, this reasoning was recently applied in the Central District of California in the matter entitled *Marin v. Lowes Hollywood Hotel, LLC*, No. CV 24-6696-GW-MARx, 2024 U.S. Dist. LEXIS 209108 (C.D. Cal. Oct. 16, 2024).  There,  the district court considered the very question presented here—whether a previous class action settlement with claims and liability periods that overlapped with the *Marin* class action had preclusive effects on the *Marin* amount-in-controversy calculation—and noted that "the weight of authority on the matter suggests that this previous settlement should be considered as an affirmative defense that does not limit the amount in controversy at this stage . . . ."  *Marin*, 2024 U.S. Dist. LEXIS 209108, at *14 (citations omitted).

  *Second*, Defendants contend that Plaintiff's own class definition does not limit the class period to one that begins after the *Reyes* class period and, as such, cannot affect the amount-in-controversy calculation in the manner Plaintiff suggests.  (Opp'n 21–22.)  The Court again agrees.  Had Plaintiff intended to limit the class period in the way he now asserts, he could have done so with a single stroke of his pen (or a few clicks of his keyboard).  He did not.  Instead, the Complaint asserts, among others, a Section 203 look-back period of three years (to March 26, 2022).  (*See* Compl.  ¶ 39.)  That Plaintiff may now, after the fact and for purposes of this Motion, concede that the *Reyes* Judgment "subsume[s] a majority of the Class Action claims asserted in [his] Complaint" (Mot. 8), is of no

1  consequence as the Complaint stands on its allegations unless and until Plaintiff

2  amends it.  This he has not done.

3      Plaintiff's authorities—*Priddy v. Lane Bryant, Inc.*, No. C 08-5377 JL, 2010

4  U.S. Dist. LEXIS 155361 (N.D. Cal. Oct. 29, 2010), and *DeLeon v. NCR Corp.*,

5  No. C 12-01637 SBA, 2013 U.S. Dist. LEXIS 17528 (N.D. Cal. Feb. 8, 2013)—do

6  not compel a different result.  Plaintiff points to both cases for the proposition that a

7  class-wide release entered into after a second, overlapping class action is filed and

8  removed to federal court can defeat CAFA jurisdiction in the second case, requiring

9  its remand.  (Mot. 13–14.)  But these cases do not help Plaintiff.  Although, as in

10  *Priddy* and *DeLeon*, the Court finds that there exists an identity of claims and class

11  period between this and the *Reyes* Action, subsequent authorities firmly establish

12  that the affirmative defense of *res judicata*—forever barring and enjoining class

13  members from bringing claims released by a prior settlement—cannot defeat CAFA

14  jurisdiction.  *See Arias*, 936 F.3d at 928; *see also Visendi v. Bank of Am., N.A.*, 733

15  F.3d 863, 868 (9th Cir. 2013) (quoting *United Steel, Paper & Forestry, Rubber,*

16  *Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell*

17  *Oil Co.*, 602 F.3d 1087, 1091–92 (9th Cir. 2010)).

18

19                                    * * *

20      In sum, for the reasons stated above, the Court declines to find, as Plaintiff

21  requests, that the amount in controversy is overstated due to Defendants' failure to

22  account for the preclusive effect of the *Reyes* Judgment.

23

24      **2.    Defendants' amount-in-controversy calculation is not based**

25      **upon flawed facts and speculative and flawed assumptions.**

26      For removal purposes, Defendants calculated the $6,669,638 amount in

27  controversy based solely on the Section 203 penalty claim.  As noted above, this

28  penalty is the daily wages of the separated employee, accruing daily until the wages

                                      14

are paid for a maximum of 30 days.  *See* Cal. Labor Code § 203.  Defendants' amount in controversy is based on the separation of 893 putative class members during the relevant period, multiplied by their average daily rate of $248.96 ($31.12 average hourly rate multiplied by 8 hours per day), multiplied by the 30 allowable days.  (Removal 8.)  With the exception of the violation rate, the data points are provided through the Maico-Smith Declaration.  (Maico-Smith Decl. ¶¶ 3–5.)

Plaintiff contends that Defendants' amount-in-controversy calculation should be discredited because it is based on Defendants' "flawed foundation" of facts upon which Defendants, in turn, apply "speculative and flawed assumptions."  (Mot. 15–17.)  With respect to the factual underpinnings of Defendants' calculation, Plaintiff takes issue with the number of qualifying putative class members and their average daily rate of pay.[7]  (Mot. 16; Reply 5.)  With respect to the assumptions applied to those data points, Plaintiff takes issue with Defendants' assumption of a 100% violation rate.  (*Id*.)

Defendants respond that the Maico-Smith Declaration adequately supports the factual foundation of the calculation and the allegations in the Complaint support their amount-in-controversy assumptions.  For the reasons set forth below, the Court agrees.

Plaintiff's first contention—that Defendants' data points provide a flawed factual foundation for the amount-in-controversy calculation (Mot. 16)—is without merit.  Plaintiff challenges Defendants' 893-count of former employees and their related $31.12 average hourly rate on the ground that Defendants did not adjust these figures by excluding former employees whose claims are released under the *Reyes* Judgment.  (*Id.* at 17.)  This argument is unavailing.  As a starting point, Plaintiff puts forth no evidence to rebut Defendants' calculation.  (*See generally*

---

[7] Plaintiff also takes issue with the number of workweeks used by Defendants. (Mot. 16.)  However, this data point is not used for the Section 203 penalty calculation and, as such, is not relevant to this analysis.

Mot.; *see generally* Reply.)  While Plaintiff is correct that, under a factual attack of the amount in controversy, it is not his burden to provide alternative calculations (Reply 3–5), he still must present "a reasoned argument as to why any assumptions . . . are not supported by the evidence." *Bernardo v. Carl's Jr. Rests. LLC*, No. 2:25-cv-00226-CAS-PVCx, 2025 U.S. Dist. LEXIS 105288, at *11 (C.D. Cal. June 2, 2025).  This he has not done.  Plaintiff's factual attack is based on the argument that Defendants should have accounted for the impact of the *Reyes* Judgment.  (Mot. 16; Reply 5.)  But as the Court already decided above, any possible impact that the *Reyes* Judgment might have on Plaintiff's ultimate recovery cannot defeat the amount in controversy calculation at the time of removal.  (*See supra*, Section V.B.1.)  Thus, Plaintiff's factual attack fails because his argument is not reasoned; indeed, it is legally flawed.

Plaintiff's second contention—that Defendants' amount in controversy calculation is based on an improper 100% violation rate assumption (Mot. 15–17; Reply 6–8)—also lacks merit.  Plaintiff challenges the underpinnings of the 100% violation rate:  (1) that *all* former employees are entitled to Section 203 penalties, and (2) that *all* such employees are entitled to the *maximum* thirty (30) days' of such penalties at a *maximum* of eight (8) hours per day.  (Mot. 16–17.)  Defendants respond that their violation rate assumption is reasonable based on the allegations in the Complaint.  (Opp'n 15–16.)  The Court agrees.

The reasonableness of an assumption turns on which element of the amount-in-controversy calculation is at issue.  *Perez*, 131 F.4th at 808.  Thus, "in a wage-and-hour case, the number of employees in the class may be most easily determined by examining the defendant's employment records," making it reasonable to expect the defendant to introduce such evidence.  *Id.* (citation omitted).  In contrast, "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the *alleged* violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist."  *Id.*  To

16

1    require evidence proving a violation-rate assumption "would 'impose[] a

2    requirement that [the defendant] prove it actually violated the law at the assumed

3    rate,' even when the defendant maintains that it did not violate the law at all." *Id.* at

4    808–09 (quoting *Arias*, 936 F.3d at 927 (alterations in original)).  Thus, "a CAFA

5    defendant can most readily ascertain the violation rate by looking at the plaintiff's

6    complaint." *Id.* (quoting *Arias*, 936 F.3d at 927).  "[A]n assumption is not

7    unreasonable simply because another equally valid assumption may exist." *Id.* at

8    809 (quoting *Arias*, 936 F.3d at 927).  Thus, an amount-in-controversy assumption

9    "is not defeated merely because it is equally possible that damages might be 'less

10   than the requisite . . . amount.'" *Id*. at 810 (quoting *Arias*, 936 F.3d at 927).

11        Here, the three elements of Plaintiff's 100% violation rate are supported by

12   the allegations in the Complaint.  The assumption that *all* former employees are

13   owed some amount of Section 203 penalties is supported by the allegation "that the

14   putative class was owed, at the least, unpaid minimum wages, unpaid overtime,

15   unpaid meal and rest premiums, all of which were unpaid or underpaid based on

16   Defendants' 'policy and practice,'" coupled with the allegation of "*per shift*"

17   violations, which together reasonably suggest that all terminated employees during

18   the three-year lookback period would be owed some amount of unpaid wages.

19   (Compl. ¶¶ 16, 44, 55, 63, 71).)  The assumption that the separated employees were

20   owed a maximum of 30 days of penalties is reasonably supported by the allegations

21   that Defendants not only failed to pay, but, more significantly *have yet to pay*, "all

22   wages earned and unpaid prior to separation of employment." (Compl.      ¶¶ 160,

23   162.)  Finally, the assumption that the 30 days' penalties should be calculated based

24   on an 8-hour day is supported by the allegation that putative class members are

25   owed overtime wages (Compl. ¶¶ 19–20) which, by definition under California law,

26   contemplates that the employees worked more than 8 hours per day.  *See* Cal. Labor

27   Code § 510; California Industrial Welfare Commission Order No. 5-2001 at § 3.

28   ///

1    This is consistent with Ninth Circuit authority.  In *Jauregui*, the Ninth Circuit

2 rejected as "inappropriate" the district court's "demand for certitude" over the

3 assumptions used in calculating the amount in controversy.  *Jauregui*, 28 F.4th at

4 993.  It explained:

5

6        The problem with that approach is that a CAFA defendant's
         amount in controversy assumptions in support of removal
7        will always be just that: assumptions.  At that stage of the
         litigation, the defendant is being asked to use the plaintiff's
8        complaint—much of which it presumably disagrees with—
         to estimate an amount in controversy.  This is also at a stage
9        of the litigation before any of the disputes over key facts
         have been resolved.  We have therefore made it clear that
10       when calculating the amount in controversy, "the parties
11       need not predict the trier of fact's eventual award with one
         hundred percent accuracy." . . .  As is inescapable at this
12       early stage of the litigation, the removing party must be able
13       to rely "on a chain of reasoning that includes assumptions to
         satisfy its burden to prove by a preponderance of the
14       evidence that the amount in controversy exceeds $5
         million," as long as the reasoning and underlying
15       assumptions are reasonable.
16

17

18 *Id.*  In rejecting the district court's criticism that the defendant "provide[d] no

19 evidence" in support of the maximum 30-day waiting time penalty, the Ninth

20 Circuit went on to hold that "it was not unreasonable for [the defendant] to assume

21 that the vast majority (if not all) of the alleged violations . . . would have happened

22 more than 30 days before the suit was filed, which would entitle the employees to

23 the 30-day penalty."  *Id.* at 993–94.  It clarified:  "The fact that a very small

24 percentage of employees might possibly not be entitled to the maximum penalty is

25 not an appropriate reason to dismiss altogether Defendant's estimate for this claim."

26 *Id.* at 994.

27    As Defendants point out, countless district courts have found a 100%

28 violation rate appropriate for Section 203 penalties premised on underlying facts

1    similar to those alleged here.  (*See* Opp'n 17–19 (listing fifteen cases between 2010

2    and 2025 approving 100% violation rates in the context of "pattern and practice"

3    allegations).)  Plaintiff's reliance on *Toribio v. ITT Aero. Controls LLC*, No. CV

4    19-5430-GW-JPRx, 2019 U.S. Dist. LEXIS 153461 (C.D. Cal. Sep. 5, 2019), to

5    undermine the holdings in these cases, is of no avail.  While Plaintiff is correct that

6    the court in *Toribio* found the assertion that courts routinely accept assumptions

7    involving "pattern and practice" allegations to be an "overstatement," Plaintiff

8    seems to ignore that the court also acknowledged that this question is largely

9    unsettled, noting that "[d]istrict courts are all-over-the-map deciding how to

10   handle" this issue.  *Toribio*, 2019 U.S. Dist. LEXIS 153461, at *9–10.  More

11   importantly here, the concern raised by the court in *Toribio* involved the violation

12   rate assumption for meal period, rest break, and wage statement claims, not a

13   Section  203 claim, *Toribio*, 2019 U.S. Dist. LEXIS 153461, at *2, 11, which

14   Defendant argues, and the Court agrees, is inherently different from a Section 203

15   violation rate in that the latter is premised on the assumed violation of multiple

16   underlying statutes, only one of which has to be true during the entire class period

17   to trigger Section 203 penalties for each putative class member.  (Mot. 15–16.)

18        Plaintiff's two other authorities also are of no avail.  Neither *Dupre v. GM*,

19   No. CV-10-00955-RGK(Ex), 2010 U.S. Dist. LEXIS 95049 (C.D. Cal. 2010), nor

20   *Marshall v. G2 Secure Staff, LLC*, No. 2:14-cv-04322-ODW(MANx), 2014 U.S.

21   Dist. LEXIS 95620 (C.D. Cal. July 14, 2014), addresses the violation rate for the

22   amount-in-controversy calculation of a Section 203 claim.  As with *Toribio*, these

23   authorities are inapposite.

24

25                                    * * *

26        In sum, for the reasons stated above, the Court declines to find, as Plaintiff

27   contends, that the amount in controversy is overstated based on a flawed factual

28   foundation and speculative and flawed assumptions.

                                    19

### 3.    Conclusion as to Plaintiff's request for remand

Based on the foregoing, the Court concludes that the amount placed in controversy in Defendants' notice of removal and supporting evidence, based solely on Plaintiff's Section 203 claim, is **6,669,638**.  As this exceeds the $5 million threshold required for original federal court jurisdiction under CAFA, the Court finds that it has jurisdiction to hear this case.  In light of this conclusion, the Court declines to reach the issue of whether the alleged 25% in associated attorneys' fees (Removal ¶¶ 27–28) or Plaintiff's other claims (Opp'n 23–27) are appropriate and/or necessary to satisfy the CAFA amount in controversy.

### C.    Plaintiff Is Not Entitled To Attorneys' Fees

Plaintiff contends he is entitled to an award of the attorneys' fees and costs he incurred in litigating this motion.  (Mot. 18–19; Reply 10–11.)  Defendants oppose this request.  (Opp'n 27–28.)

In a successful motion to remand, a district court may order the defendant to pay the prevailing plaintiff its "just costs and any actual expenses, including attorney's fees, incurred as a result of the removal."  *Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1160 (C.D. Cal. 2009) (quoting 28 U.S.C. § 1447(c)).

Here, Plaintiff did not prevail on his Motion.  On this basis, the Court declines to award Plaintiff his attorneys' fees and costs.

### VI.    CONCLUSION

On the basis of the foregoing, the Court **ORDERS** as follows:

1.    The Court **GRANTS** Plaintiff's RJN;

2.    The Court  **DENIES** Plaintiff's Motion in its entirety;

3.    The matter is **TEMPORARILY STAYED** pending the Court's decision on Defendants' motion to stay the case, presently under submission.  (*See* ECF Nos. 27, 33.)  The Court **DIRECTS** the Clerk

1     to administratively close the action (JS-6). The sole effect of

2     administrative closure is to remove the action from the Court's active

3     docket for record-keeping purposes.  Administrative closure does not

4     affect the merits of Plaintiff's claims and does not prejudice any party

5     to this action. The Court retains jurisdiction over this action.

6     **IT IS SO ORDERED.**

7

8     DATED: August 19, 2025

9                                                    _____
                                                     HONORABLE MARIA A. AUDERO
10                                                   UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28